IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MRW PROPERTY, LLC** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. _____ |
| | ) |
| **THOMAS RICHARDS, DIANE** | ) |
| **RICHARDS, AND JACKS FORK** | ) |
| **RIVER COUNTRY ESTATES, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Plaintiff MRW Property, LLC, by and through its attorneys of record, brings its Complaint against the above-named Defendants and states:

## PARTIES

1. Plaintiff MRW Property, LLC, is a Missouri limited liability company, in good standing with the State of Missouri, regularly conducts business in the State of Missouri ("MRW").

2. Defendants Thomas Richards and Diane Richards, are husband and wife, and reside at 18218 Baywood Forrest Drive, Hudson, Florida, 34667.

3. Defendant Jacks Fork River Country Estates, LLC ("JFRCE"), is, upon information and belief, a Missouri limited liability company in good standing with the State of Missouri, and may be served upon its registered agent, Ed Huffman, HCR 4, Box 75, Birch Tree, Missouri, 65438.

4. Upon information and belief, Defendant Thomas Richards is the sole member of

JFRCE.

5. Upon information and belief, JFRCE, Defendant Thomas Richards, and Defendant Diane Richards (at times collectively referred to as the "Defendants") owned, jointly or separately, certain lots located in Shannon County, Missouri, and commonly known as Gracie's Bluebird Hill Equestrian Estates and subsequently known as Jacks Fork River Country Estates.

6. Plaintiff owns certain lots located in Shannon County, Missouri, and commonly known as Gracie's Bluebird Hill Equestrian Estates and subsequently known as Jacks Fork River Country Estates.

## JURISDICTION AND VENUE

7. MRW conducts business throughout the State of Missouri.

8. The Property at issue in this matter is located in Shannon County, Missouri.

9. Defendant Thomas Richards and Defendant Diane Richards are residents of the State of Florida.

10. Upon information and belief, JFRCE appears to conduct business in the State of Missouri and the State of Florida.

11. The Defendants have engaged in certain transactions and conveyances of real property interests which have caused MRW to suffer damages.

11. As more fully set forth below, MRW, as the direct result of the actions of one or more of the Defendants, has suffered damages in excess of $75,000.00.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332.

13. Venue is proper before this Court under 28 U.S.C. Section 1391(a).

## GENERAL FACTUAL ALLEGATIONS

14. In October 2005, Jeff Roberts, a non-party to this case, purchased certain property located in Shannon County, Missouri, which would become Gracie's Bluebird Hill Equestrian Estates (referred to as "Gracie's Bluebird Hill" or the "Subdivision").

15. On or about July 23, 2007, Jeff Roberts recorded Declarations of Covenants, Easements and Restrictions of Gracie's Bluebird Hill (the "2007 DCR's"), which were recorded in Book 5, Page 26, records of Shannon County, Missouri.

16. The 2007 DCR's, as well as the Subdivision plats related to Gracie's Bluebird Hill and recorded in the records of Shannon County, Missouri, established and recognized certain common areas for Gracie's Bluebird Hill.

17. The 2007 DCR's stated that they could only be amended, modified, or abrogated upon both the consent of the Owner/Developer and the owners of 2/3 of the residential tracts in Gracie's Bluebird Hill.

18. On or about August 13, 2007, Jeff Roberts recorded an Addendum to the 2007 DCR's, with the consent of Paul and Edna Nash, to exclude their property from the 2007 DCR's.

19. This Addendum to the 2007 DCR's is recorded in the records of Shannon County, Missouri as Document Number 07-12-32.

20. At the time the Addendum to the 2007 DCR's were recorded, Jeff Roberts owned in excess of 95% of the lots in Gracie's Bluebird Hill, and as such, in his capacity as the Owner/Developer and constituting more than 2/3 of the owners of the residential tracts, the Addendum to the 2007 DCR's were properly executed and recorded, and constitute legally binding encumbrances against the property located in Gracie's Bluebird Hill.

21. In March 2008, Jeff Roberts sold approximately 63% of his land holdings in Gracie's Bluebird Hill to Walter Schoenauer. After this transaction, Jeff Roberts owned 22.9% of the property located in Gracie's Bluebird Hill and Walter Schoenauer owned 62.9% of the lots located in Gracie's Bluebird Hill.

22. In February 2009, Jeff Roberts sold his 22.9% of the property located in Gracie's Bluebird Hill to JFRCE.

23. In May 2009, JFRCE attempted to amend the 2007 DCR's by recording an "Amendments to Declarations of Covenants, Easements and Restrictions," recorded in the records of Shannon County, Missouri, as Instrument Number 09-428 (the "JFRCE Amended DCR's").

24. The JFRCE Amended DCR's appeared to attempt to amend the 2007 DCR's as follows:

    a. change the name of Gracie's Bluebird Hill to "Jack Fork River Country Estates";

    b. permit "upscale multi-family homes" as approved by Defendant Thomas Richards;

    c. requiring new owners to pay a one-time $500.00 fee to the homeowner's association; and

    d. requiring the installation of "vapor yard light" in front of all newly constructed homes.

25. The JFRCE Amended DCR's added new burdens to the property formerly known as Gracie's Bluebird Hill, and do not contain any evidence that they were approved by the Owner/Developer and 2/3 of the property owners in the Subdivision.

26. In September 2009, JFRCE filed a "Filing of Replat of Lots 20, 21, 22, 23, and the Common Areas," which is recorded in the records of Shannon County, Missouri, as Instrument Number 09-1041 (the "2009 Replat").

27. The 2009 Replat appears to reconfigure Lots 20-23 and to reduce the common area in the Subdivision.

28. The 2009 Replat eliminates common area rights of the then owners in the Subdivision and does not appear to have been approved by the Owner/Developer and at least 2/3 of the property owners in the Subdivision.

29. In March 2010, JFRCE filed a "Correction" to the 2009 Replat, which is recorded in the records of Shannon County, Missouri, as Instrument Number 10-309 (the "Correction").

30. The Correction appears to add "Lot 20D"; however, it does not appear to have been approved by the Owner/Developer and at least 2/3 of the property owners in the Subdivision.

31. In September 2010, JFRCE filed an "Amendments to Declarations of Covenants, Easements and Restrictions" relating to the Subdivision, which is recorded in the records of Shannon County, Missouri, as Instrument Number 10-959 (the "2010 Amendment").

32. The 2010 Amendment appears to attempt to make the following changes to the 2007 DCR's:

   a. allow a bed and breakfast business to operate at Lot 22A; and

   b. remove what are referred to as "Plot A and Plot B" from the common areas.

33. The 2010 Amendment added new burdens to the property formerly known as Gracie's Bluebird Hill, reduces the size of the common area in the Subdivision enjoyed by the then owners of lots in the Subdivision, and does not contain any evidence that they were approved by

the Owner/Developer and 2/3 of the property owners in the Subdivision.

34. In September 2011, Walter Schoenauer defaulted under the terms of a promissory note secured by a Deed of Trust recorded in the records of Shannon County, Missouri, as Instrument No. 2008-296.

35. As a result of this default, the trustee named in the Deed of Trust did execute the non-judicial power of sale granted by Walter Schoenauer, and foreclosed the Deed of Trust.

36. Jeff Roberts obtained the property owned by Walter Schoenauer by a Trustee's Deed Under Sale, recorded as Instrument No. 2011-948, records of Shannon County, Missouri, thereby resulting in Jeff Roberts owning 55.7% of the property located in the Subdivision with JFRCE owning 22.9% of the property located in the Subdivision.

37. In October 2011, by that Warranty Deed recorded as Instrument No. 2011-1004, Jeff Roberts transferred all of his right, title, and interest in his lots/property owned in the Subdivision to MRW.

38. In January 2011, JFRCE recorded an "Affidavit of Successor Owner/Developer," recorded as Instrument No. 11-34, records of Shannon County, Missouri, by which JFRCE attempted to restate and correct prior instruments recorded by JFRCE.

39. In November 2011, JFRCE recorded an "Affidavit of Successor Owner/Developer," recorded as Instrument No. 11-1188, records of Shannon County, Missouri, by which JFRCE attempted to "reverse" the acreage or description of various lots located in the Subdivision.

40. Instrument No. 11-1188 is devoid, on its face, of any evidence that the Owner/Developer approved this transaction and any evidence that 2/3 of the owners approved this

transaction or recorded instrument.

41. By warranty deed recorded as Instrument No. 12-615, JFRCE attempted to transfer, sell, and convey, as grantor, to Eric R. Dannemaier, as grantee, Lot A and Lot B in the Subdivision, as well as a portion of the common area dedicated to all owners in the Subdivision (the "Dannemaier Deed").

42. The transfer of common area rights under the Dannemaier Deed is precluded under the terms of the 2007 DCR's, including all lawful amendments thereto, and this transfer is not evidenced by any approval or agreement of the Owner/Develop and 2/3 of the owners in the Subdivision.

## COUNT I
### (Declaratory Judgment and Injunction vs. Defendants)

43. MRW incorporates its allegations from paragraphs 1 through 42 into this Count I.

44. The Declaratory Judgment Act, Section 527.010, RSMo., provides that the Court has the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

45. This case involves a justiciable controversy because MRW has an interest in the 2007 DCR's, as properly and lawfully amended; a substantial controversy exists with genuine and adverse interests between MRW and the Defendants; and the controversy before the Court is right for judicial determination.

46. The issues in dispute amongst the parties that need determination by the Court are as follows:

    a. the validity and enforceability of the JFRCE Amended DCR's;

    b. the validity and enforceability of the 2009 Replat;

      c.      the validity and enforceability of the Correction;

      d.      the validity and enforceability of the 2010 Amendment;

      e.      the validity and enforceability of the January 2011 Affidavit of Successor Owner/Developer;

      f.      the validity and enforceability of the November 2011 Affidavit of Successor Owner/Developer; and

      g.      the validity and enforceability of the Dannemaier Deed;

      h.      whether JFRCE had the authority to unilaterally take action or engage in the conveyances and transactions set forth in the documents referenced in paragraphs 46(a) through 46(g);

      i.      whether JFRCE had the authority to unilaterally amend and modify the 2007 DCR's;

      j.      whether JFRCE had the authority to reduce the size of and transfer portions of the common areas in the Subdivision;

      k.      whether the declarations, amendments, modifications, or alterations of any portion of the 2007 DCR's by JFRCE were valid; and

      l.      whether any changes to or additional assessments made by JFRCE are valid and enforceable.

47.    The Court should enter a judgment declare and an injunction mandating the following:

      a.      the amendments made by JFRCE to the 2007 Amendments are invalid and unenforceable;

    b. the conveyance of any common areas in the Subdivision by JFRCE are invalid and unenforceable;

    c. the reduction of any common areas in the Subdivision by JFRCE are invalid and unenforceable;

    d. JFRCE, as an owner of only 22.9% of the lots in the Subdivision does not have the authority to unilaterally alter, amend, modify, or otherwise change the 2007 DCR's; and

    e. JFRCE, as an owner of only 22.9% of the lots in the Subdivision does not have the authority to unilaterally alter, amend, modify, or otherwise change the assessments set forth under the 2007 DCR's.

  48. Pursuant to Section 38 of the 2007 DCR's, MRW is entitled to recover its reasonable litigation expenses and attorney's fees from the Defendants.

  Accordingly, MRW prays that the Court enter judgment declaring the issues set forth above in paragraph 46 in its favor and against the Defendants; enter a permanent injunction against the Defendants; and assess all costs and fees pursuant to the terms of the 2007 DCR's against the Defendants; and for such other orders and relief the Court deems just and proper under the circumstances.

**COUNT II**
**(Breach of Fiduciary Duty vs. JFRCE)**

  49. MRW incorporates its allegations from paragraphs 1 through 48 into this Count II.

  50. JFRCE owes fiduciary duties to MRW due to its self-proclaimed "Owner/Developer" status, which MRW contests.

  51. JFRCE breached these fiduciary duties by improperly modifying, amending, and altering the 2007 DCR's, improperly reducing the size of the Subdivision common areas,

improperly conveying portions of the Subdivision common areas, engaging in conduct in direct contravention of the 2007 DCR's, putting its own interests ahead of those of MRW and the other owners in the Subdivision, levying improper assessments, and improperly conveying lots or granting exemptions from the 2007 DCR's.

52. JFRCE has further breached its fiduciary duties by preventing MRW from selling the lots it owns in the Subdivision by, among other things, taking down "for sale" signs, advising MRW's potential buyers of "issues with the Subdivision," and otherwise interfering with MRW's right and ability to sell its lots in the Subdivision.

53. MRW has been damaged by the conduct of JFRCE conduct by decreased value in the properly held and owned by MRW in the Subdivision and the reduction and transfer of Subdivision amenities, including reducing the common areas and access to the Jacks Fork River.

54. MRW has been damaged by JFRCE's direct violation of the 2007 DCR's.

55. The Actions of JFRCE were and continue to be willful and wanton.

Accordingly, MRW prays for an award that will fairly compensate it for the actual and general damages caused them, including but not limited to: (a) an amount compensating MRW for its actual and consequential damages resulting from JFRCE's conduct; (b) an amount compensating MRW for its attorney's fees and litigation costs incurred in pursuing this matter; (c) punitive damages; and (d) for such other and further relief the Court deems just and proper.

## COUNT III
### (Civil Conspiracy vs. Defendants)

56. MRW incorporates its allegations from paragraphs 1 through 55 into this Count III.

57. JFRCE and the Defendants shared plans to sell lots in the Subdivision for profit.

58. JFRCE and the Defendants have taken substantial steps to begin selling lots in the

Subdivision, including:

    a.    marketing lots for sale;

    b.    contracting with potential buyers for these lots;

    c.    amending the 2007 DCR's in order to sell Lots to particular buyer;

    d.    modifying common areas; and

    e.    granting exemptions for businesses to operate on lots.

59. JFRCE and the Defendants have substantial steps to violate the 2007 DCR's by:

    a.    unilaterally modifying, amending, and changing the 2007 DCR's;

    b.    conveying lots improperly;

    c.    conveying common area space;

    d.    modifying common area space; and

    e.    increasing assessments.

60. The actions by JFRCE and the Defendants are in direct violation of the 2007 DCR's.

61. JFRCE and the Defendants conspired to seek and cause an amendment and modification to the 2007 DCR's to the detriment of MRW.

62. In furtherance of this conspiracy, without sufficient notice to MRW, JFRCE and the Defendants caused the modification and amendments to the 2007 DCR's.

63. These actions by JFRCE and the Defendants are a breach of the 2007 DCR's and a breach of their fiduciary obligations to MRW.

64. The modification and amendments to the 2007 DCR's caused damage to the Subdivision and to MRW.

65. The actions of JFRCE and the Defendants in violation of the 2007 DCR's and damaged MRW.

66. The actions of JFRCE and the Defendants were informed, willful, and wanton.

Accordingly, MRW prays for an award that will fairly compensate it for the actual and general damages caused them, including but not limited to: (a) an amount compensating MRW for its actual and consequential damages resulting from JFRCE's conduct; (b) an amount compensating MRW for its attorney's fees and litigation costs incurred in pursuing this matter; (c) punitive damages; and (d) for such other and further relief the Court deems just and proper.

## COUNT IV
### (Tortious Interference vs. Defendants)

67. MRW incorporates its allegations from paragraphs 1 through 66 into this Count IV.

68. MRW has a valid expectancy arising from the 2007 DCR's.

69. MRW has attempted to sell its lots in the Subdivision and market the same for sale over the last several years.

70. JFRCE and the Defendants were aware of MRW's efforts to sell these lots and took action to prevent the sale of the lots by MRW and promoted its own lots for sale.

71. JFRCE and the Defendants would remove "for sale" signs from MRW's lots, dump trash and debris on MRW's lots, and caused potential buyers of MRW lots to terminate any purchase agreements.

72. At all relevant times, JFRCE and the Defendants were on notice of MRW's rights and expectancies under the 2007 DCR's and its efforts to sell its lots.

73. JFRCE and the Defendants have taken several steps to cause a breach of the 2007 DCR's and to interfere with MRW's expectancies under the 2007 DCR's and its efforts to sell its

lots.

74. JFRCE and the Defendants had no justification for their conduct.

75. As a result of the actions of JFRCE and the Defendants, MRW has suffered damages.

76. The actions of JFRCE and the Defendants were informed, willful, and wanton.

Accordingly, MRW prays for an award that will fairly compensate it for the actual and general damages caused them, including but not limited to: (a) an amount compensating MRW for its actual and consequential damages resulting from JFRCE's conduct; (b) an amount compensating MRW for its attorney's fees and litigation costs incurred in pursuing this matter; (c) punitive damages; and (d) for such other and further relief the Court deems just and proper.

Respectfully submitted,

**MARIEA, SIGMUND, & BROWNING, L.L.C.**

By: /s/ Dougglas A. Stultz
Jonathan C. Browning   #52820/#52820MO
Dougglas A. Stultz        #56201/#56201MO
305 East McCarty Street, Suite 300
Jefferson City, Missouri 65101
Telephone:    (573) 635-7699
Facsimile:     (573) 635-7425
Email:           jbrowning@msblawfirm.com
                    dstultz@msblawfirm.com

ATTORNEYS FOR PLAINITFF